IN THE UNITED STATES DISTRICT COURT OF MARYLAND
(Northern Division)

JANE DOE )
)
Plaintiff, )
v. )
)
MCDONOGH SCHOOL, INCORPORATED )
8600 McDonogh Road ) Civil Action No. ____________
Owings Mills, MD 21117 )
Serve: Jennifer L. Curry )
100 Light Street, 19th Floor )
Baltimore, MD 21202 )
)
GEORGE DENNIS O'BRIEN )
7563 Quinto Drive )
Sarasota, FL 34238 )

Defendants.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Overview of the Case

1. Plaintiff Jane Doe ("plaintiff") here sues defendants McDonogh School, Incorporated ("McDonogh" or "school") and George Dennis O'Brien ("O'Brien") for substantial monetary damages arising from the serious harms and injuries she suffered when she was a student at McDonogh (1975-1987). During plaintiff's years at McDonogh, plaintiff was groomed and sexually abused by Dennis O'Brien, a teacher at McDonogh School. Despite the school's knowledge of O'Brien's predatory actions, including direct reports of O'Brien's previous sexual abuse of a student, the school covered up this knowledge and allowed and enabled O'Brien to abuse plaintiff. McDonogh breached its obligation to protect plaintiff from harm.

Parties

2. Plaintiff Jane Doe is a citizen of the State of Arizona.

3. Defendant McDonogh School, Incorporated is a private, coed pre-K-12 school in the State of Maryland (a Maryland "citizen"), located (residing) at 8600 McDonogh Road, Owings Mills, MD 21117.

4. Defendant George Dennis O'Brien is a citizen of the state of Florida, residing at 7563 Quinto Dr, Sarasota, FL 34238.

## Jurisdiction and Venue

5. Pursuant to 28 U.S.C. § 1332(a)(1), this Court has subject matter jurisdiction over this case because there is diversity of citizenship between plaintiff (Arizona) and defendants (Maryland and Florida), and the amount in controversy exceeds $75,000, exclusive of interest and costs. Pursuant to 28 U.S.C. § 1391(b)(1) & (2). Venue is proper in this Court both because defendant McDonogh resides in this district and because a substantial part of the events and omissions giving rise to this case occurred in this district.

## Statement of Facts

### Plaintiff's attendance McDonogh and the abuse she suffered there

6. Plaintiff began attending McDonogh as a first-grade student in 1975, moved full-time onto campus in 1976, and she remained there until graduating high school in 1987.

7. As a student living on campus, plaintiff was in the care and custody and subject to the authority of the school. Plaintiff was entitled to the school's protection, and the school had a duty to provide it.

8. During plaintiff's attendance at McDonogh, faculty member O'Brien sexually abused plaintiff on multiple occasions on the school's property.

9. O'Brien's abuse of plaintiff extended over years, beginning with sexual comments and inappropriate conduct towards plaintiff as a middle schooler, "grooming" her for further abuse. As plaintiff aged, the abuse escalated and became physical.

10. The abuse occurred on school property during school hours, and on extracurricular activities sanctioned or encouraged by McDonogh, such as SummerSail or the Lady Maryland.

11. O'Brien's conduct was known to school officials, and prior inappropriate and sexually abusive actions with other students had been directly reported to school administration.

12. McDonogh board members, administrators, and faculty also knew or should have known of O'Brien's predatory sexual conduct over the years that plaintiff was a student at the school.

13. Yet, the school took no action to protect students or to ensure O'Brien would not continue to abuse students.

14. By force, coercion, and manipulation, O'Brien victimized plaintiff, a young student. On dozens of separate occasions over the years, O'Brien sexually assaulted plaintiff.

15. O'Brien's sexual assaults violated plaintiff's personhood, the integrity of her body, and her sense and ability to exercise control and agency over her life and body.

16. O'Brien's actions did not take place in a vacuum. Rather, the abuse took place against a backdrop of rampant child sexual abuse at McDonogh.

17. During plaintiff's years at McDonogh, the school's Dean of Students was Alvin J. Levy (deceased); Robert E. Creed (deceased) served on McDonogh's faculty. As the school later acknowledged, its administration and board knew that both Levy and Creed had been abusing McDonogh students for years prior to plaintiff's abuse. Rather than removing these perpetrators

and instituting changes to protect students, the school covered up this knowledge and allowed and enabled the abusers at the school to continue to harm their victims.

18. Despite uncontroverted and undeniable knowledge that teachers at the school were abusing students, including knowledge of specific students abused by Creed and O'Brien before the abuse inflicted on plaintiff, McDonogh took no actions to protect the students.

19. Despite their knowledge, McDonogh's board, administration, and faculty took no action to remove or restrain O'Brien. McDonogh did not do the most obvious thing it could have and should have done: remove abusive teachers from the school. Instead of cutting the cancer out, the school, board members, administrators, and teachers chose – and it was a choice – silence and inaction (complicity). The school and its legally responsible officers and agents were confronted with the blunt and ugly fact that McDonogh was and had been inhabited and infected by active, aggressive, repetitive sexual predators whose prey of choice was young McDonogh students. McDonogh's collective silence and inaction enabled O'Brien's horrific conduct to continue. Plaintiff became the next involuntary recipient of O'Brien's abuses and exploitation.

20. In 1987, following O'Brien's departure from McDonogh, plaintiff informed the school administration about the abuse inflicted on her.

21. The school took no action in response.

22. The school informed plaintiff's family that it would ensure O'Brien would not work with children anymore. Despite that assurance, O'Brien continued to work on the Lady Maryland project, an educational boat built for and by schoolchildren.

<u>Plaintiff's harms and injuries</u>

23. Plaintiff suffered immediate harm and injury as a result of O'Brien's attacks and McDonogh's inaction and complicity. These injuries are ongoing and serious. The direct and proximate cause of these injuries is O'Brien's actions, and the actions, inactions, and negligence of McDonogh. McDonogh knew that its faculty members had been engaging in wrongful student-destroying sexual misconduct.

24. Plaintiff suffered severe emotional distress during and after these school years. Plaintiff's time at McDonogh was a time of shame, horror, fear, abuse, and intimidation.

25. The aftermath of this abuse led plaintiff down a path of emotional turmoil, causing her to suffer severe emotional distress.

<u>McDonogh's highly belated disclosures</u>

26. Decades after plaintiff left the school, on November 7, 2016, McDonogh informed alumni and others that in 1985, Robert Creed was found guilty of charges of sexual abuse after a McDonogh alumnus, who had been sexually abused when he attended McDonogh in the early 1980s, pressed charges against him.

27. McDonogh's November 7, 2016 letter also reported that Levy, the school's long-time former Dean of Students, had previously been indicted on charges of sexual abuse. While Levy died prior to the disposition of the charges against him, the school subsequently reported that Levy had no intention to contest the charges.

28. Though Creed was charged in 1985 and Levy's indictment was issued in 1992, decades prior to its letter to alumni, McDonogh has not explained its truly extraordinary and plainly calculated delay in reporting the "news" to potentially affected parties.

29. McDonogh's 2016 letter stated that McDonogh, for its part, intended to conduct an outside investigation of matters related to Creed and Levy. Almost three years later, this investigation was completed. The investigation included confirmation of what had long been known in and around the school, including by board members, administrators, and faculty, regarding Creed and Levy's sexually abusive actions. The investigation determined that "Mr. Levy and Mr. Creed engaged in sexual misconduct with 19 [known] male students—Mr. Levy from the 1940s through the 1980s and Mr. Creed from the late 1970s to the mid-1980s."

30. The letter investigation also determined that three other male faculty members engaged in sexual misconduct with five female students between the mid-1970s and the mid-1980s.

31. One of those three unnamed male faculty members was Dennis O'Brien.

32. As the investigative report makes clear, the sexual misconduct was known to responsible McDonogh officials and McDonogh took no action: "some of these allegations were reported to the School at the time, and it is now clear from the completed investigation that then-active School Administration officials and members of the Board of Trustees failed to take appropriate action when these allegations were first reported more than three decades ago."

33. McDonogh acted with reckless, if not deliberate, indifference toward plaintiff and failed to act to protect plaintiff from harm, notwithstanding its knowledge that there were teachers on campus who presented a substantial risk to plaintiff (and others). This failure to act was a breach of the school's duties and obligations to plaintiff.

34. With calculation and deliberate intent, McDonogh strategically delayed sharing its knowledge of the rampant abuse on campus and that there were other victims of plaintiff's abuser.[1]

Claims for Relief

COUNT I – Negligence
(Defendant McDonogh School, Incorporated)

35. Plaintiff here adopts and incorporates the prior allegations herein.

36. Plaintiff was a student at McDonogh and boarded there. McDonogh owed plaintiff a duty of reasonable care and protection during her attendance there. McDonogh breached its duty of care and protection and, as a direct result of that breach, plaintiff suffered and continues to suffer great harm and damage, as detailed above.

37. McDonogh breached its duty of care to plaintiff by: negligently hiring O'Brien, including failing to properly and adequately vet him and his history prior to his hiring; negligently failing to oversee, monitor, supervise and discipline O'Brien after his hiring; failing to investigate credible and repeated statements, allegations and reports of suspected incidents of O'Brien's abusive improper sexual conduct with McDonogh students; failing to investigate allegations and reports that faculty members were sexually abusing the school's students and had been doing so for decades; failing to act upon reports and information that the school, including its board members, administrators, and faculty, had about O'Brien's of sexual abuse of and improper "relationships" with McDonogh students; failing to limit or prevent O'Brien's access to plaintiff; failing to take disciplinary or corrective action with respect to O'Brien despite the school's

[1] McDonogh's explanations for these delays will be a subject for future discovery. Plaintiff strongly suspects that the delays were intentional and strategically calculated to create, if possible, statute of limitations problems for plaintiff (and other similarly wronged McDonogh students).

knowledge of his actions and misconduct; failing to report what the school knew or had good reason to strongly suspect about O'Brien's sexually abusive actions to appropriate law enforcement authorities, thereby allowing O'Brien's misconduct to continue and at plaintiff's expense; by allowing O'Brien to be a continuous threat to plaintiff's bodily integrity, health and safety; by failing to warn plaintiff and her parents of O'Brien's sexual proclivities; by failing to promptly conduct a post-report investigation of O'Brien; by failing, upon notice of O'Brien's conduct, to remove him from any and all positions and responsibilities at McDonogh and barring him from the campus forever.

38. McDonogh's actions and inactions breached the school's duty of care to plaintiff. McDonogh was required to act with the degree of reasonable care due as a private school that provided boarding and where plaintiff (and others) lived. Here, McDonogh acted with reckless, if not deliberate, indifference. McDonogh's multiple breaches of its duty created the foreseeable risk that plaintiff would suffer harm and damage. Plaintiff was a foreseeable O'Brien victim and McDonogh failed to take reasonable actions under the circumstances to prevent his access to plaintiff. The direct and proximate consequence and result of McDonogh's breaches of duty and failures to act was that plaintiff became a victim of O'Brien. O'Brien's sexual abuses of plaintiff and all the resulting harms and injuries to plaintiff were the foreseeable, if not inevitable, proximate result and consequence of McDonogh's numerous failures and breaches of its legal duties.

39. As a direct and proximate result of McDonogh's negligence and breaches of duty of reasonable care and treatment of plaintiff, plaintiff sustained and suffered physical, emotional, and psychological injuries, emotional pain, suffering and distress. Plaintiff's injuries began in her student years at McDonogh and have been and are ongoing and continuous to date. Plaintiff has

sought care and treatment and may continue to do so. Her injuries are serious, ongoing, and will continue for the balance of her life.

<u>COUNT II – Battery</u>
<u>(Defendant George Dennis O'Brien)</u>

40. Plaintiff here adopts and incorporates the prior allegations herein.

41. O'Brien inflicted upon plaintiff unwarranted grooming, sexual abuse, and unwanted physical touching, all of which were harmful and offensive, and done without the consent of plaintiff.

42. Such harmful and offensive touching caused physical pain, injury, and illness to plaintiff, and violated her sense of personal dignity.

43. O'Brien acted with malice, motivated by evil motive, intent to injury, ill will, and/or fraud.

<u>COUNT III – Intentional Inflection of Emotional Distress</u>
<u>(Defendant George Dennis O'Brien)</u>

44. Plaintiff here adopts and incorporates the prior allegations herein.

45. The unwarranted grooming, sexual abuse, and unwanted physical touching of plaintiff was intentional, reckless, extreme and outrageous, and caused plaintiff severe emotional distress.

46. O'Brien intentionally desired to inflict such distress, or knew that such distress was substantially certain to result from such conduct; or his actions were done recklessly in deliberate disregard of a high probability that emotional distress would follow.

47. O'Brien inflicted upon plaintiff unwarranted sexual attacks, and unwanted physical touching, all of which were harmful and offensive, and done when plaintiff was a child and incapable of consent.

## Prayers for Relief

WHEREFORE, based upon the facts to be proven at trial, plaintiff seeks substantial monetary relief, in an amount to be determined by the jury in excess of $75,000, plus punitive damages, available fees, interest and costs, and such other further and additional relief as the Court determines is just and proper.

## Demand for Jury Trial

Plaintiff hereby respectfully demands a trial by jury.

Respectfully submitted,

*/s/ Ari S. Casper*

Ari S. Casper (Bar # 14512)
Elimelech Baruch (Bar # 31855)
The Casper Firm, LLC
400 E. Pratt Street, Suite 903
Baltimore, MD 21202
(p) 410-989-5097
(f) 410-630-7776
(e) acasper@casperfirm.com
(e) ebaruch@casperfirm.com
Attorneys for Plaintiff